```
1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
2
                       CASE NO. 09-60243-CR-COHN
3

4    UNITED STATES OF AMERICA,        Fort Lauderdale, Florida

5                   Plaintiff,        May 28, 2010

6            vs.

7    ROBERT COX,

8                   Defendant.        Pages 1 - 35

9    ---------------------------------------------------------

10                          SENTENCING
                 BEFORE THE HONORABLE JAMES I. COHN
11                  UNITED STATES DISTRICT JUDGE

12   APPEARANCES:

13   FOR THE GOVERNMENT:      SCOTT EDENFIELD, ESQUIRE
                              United States Attorney's Office.
14                            99 Northeast Fourth Street
                              Miami, FL 33132
15

16   FOR THE DEFENDANT        TIMOTHY DAY, ESQUIRE
     COX:                     Federal Public Defender's Office
17                            One East Broward Boulevard
                              Suite 1100
18                            Fort Lauderdale, FL 33301

19

20

21   REPORTED BY:            TAMMY NESTOR, RPR
                             Official Court Reporter
22                           299 East Broward Boulevard, Room 203
                             Fort Lauderdale, Florida 33301
23                           (954) 769-5496

24

25
```

```
 1            THE COURT:  The matter before the Court is United

 2   States of America versus Robert Cox.  This is case

 3   No. 09-60243-CR.  Mr. Cox is present represented by Tim Day.

 4   The government is represented by Assistant United States

 5   Attorney Scott Edenfield.

 6            On March 16 of this year, Mr. Cox was found guilty by

 7   a jury of Counts 1, 2, and 3 of a three-count superseding

 8   indictment.

 9            Count~1 charged conspiracy to commit sex trafficking

10   of children in violation of 18 United States Code Section

11   1594(c) whereas Counts 2 and 3 charge sex trafficking of a

12   child in violation of 18 United States Code Section 1591(a)(1)

13   and (b)(2).

14            Upon receipt of the jury's verdict, the Court adjudged

15   Mr. Cox guilty of Counts 1, 2 and 3, ordered a presentence

16   investigation report, and deferred sentence until today's date.

17            Have counsel for the respective parties received a

18   copy of the presentence report, Mr. Edenfield?

19            MR. EDENFIELD:  Yes, sir.

20            THE COURT:  Mr. Day?

21            MR. DAY:  Yes.

22            THE COURT:  And, Mr. Cox, have you received and

23   reviewed a copy of the presentence report?

24            THE DEFENDANT:  Yes, Your Honor.

25            THE COURT:  There are a number of objections that were
```

```
 1   filed.  The government had filed an objection, I think, which

 2   is agreed to.

 3          MR. EDENFIELD:  Your Honor, I think as of yesterday it

 4   is not agreed to, the use of the computer enhancement.  I

 5   believe Mr. Day --

 6          MR. DAY:  He'S talking about the undue influence.

 7          MR. EDENFIELD:  I apologize, Your Honor, the undue

 8   influence, we are in agreement on that one.

 9          THE COURT:  So that objection is sustained.

10          Okay.  Now, that was the only objection filed by the

11   government to the presentence report, correct?

12          MR. EDENFIELD:  Your Honor, our objection was the

13   presentence investigation report did not include the computer

14   enhancement.

15          THE COURT:  Oh, Okay.  All right.

16          MR. EDENFIELD:  Yes.

17          THE COURT:  Okay.  Procedurally, I've gotten

18   bombarded, and I had to go down to Judge Davis' funeral

19   yesterday, and I've tried to assimilate all this information as

20   best I could.  Thank you for bringing me up to snuff here.

21          Mr. Day?

22          MR. DAY:  Thank you, Your Honor.

23          THE COURT:  And let's just address each objection one

24   at a time.  I'll hear Mr. Day, and then I'll hear the

25   government's response, and then I'll rule.
```

 1          MR. DAY:  Your Honor, first of all, with regard to the

 2    amended objections which are the first ones that I filed, and

 3    they were amended, Your Honor, because unfortunately I referred

 4    to the names of the minors in the case, I've forgotten that

 5    although I used their names at trial, that the public record

 6    you had ordered when we had that hearing, that that not be in

 7    the public record.

 8          THE COURT:  That's understandable.

 9          MR. DAY:  That's my fault.  And I apologize to the

10    government as well.  I hope that didn't cause any problems for

11    the minors.

12          We have resolved, Your Honor, the undue influence

13    objection.  The government agrees that that does not apply

14    here.

15          We are left, Your Honor, with the, I guess the first

16    objection that I filed in the amended objections would have

17    been that to the fact that this particular offense involved the

18    commission of a sex act or sexual contact or conduct.

19          I have reviewed the government's motion there, Your

20    Honor, and their argument essentially is that the definition of

21    offense includes relevant conduct.  And the relevant conduct in

22    this particular case, which we do not disagree with, clearly

23    involved a sexual act or sexual conduct.  So really I think

24    there's merit there to the government's position.

25          Where that then leaves us on that objection is with

 1    regard to the issue of double counting.  The fact that that

 2    particular conduct is taken into account in setting the base

 3    offense level of 30 for the offense and so, therefore, to give

 4    a two-level enhancement for the commission of a sex act amounts

 5    to double counting.

 6          That was in the initial amended objection that I

 7    filed, Your Honor, and the government's responded to that.

 8          With regard to that, Your Honor, I stand on the

 9    pleadings.  I don't have anything additional to offer to the

10    Court with regard to the issue of the double counting.

11          THE COURT:  All right.  The double counting,

12    Mr. Edenfield?

13          MR. EDENFIELD:  Your Honor, I know you received

14    everything fairly late in this case, so I would also rest on my

15    pleadings on the response that if Your Honor would kind of like

16    me to recap that, I'm happy to do that, but otherwise, I would

17    rest on our pleadings on that.

18          THE COURT:  All right.  Let me just -- the Court is

19    going to overrule the double counting objection.  The Court is

20    going to adopt the response in the addendum to the presentence

21    report by the office of U.S. probation which addresses that

22    issue.

23          What's the next objection?

24          MR. DAY:  Your Honor, the next objection is the

25    objection that I filed yesterday, Your Honor, 2G1.3 enhancement

 1   under (b)(3) of the guidelines section.  And again, Your Honor,

 2   my apologies on the tardiness of filing that objection.  I

 3   completely missed it.  I completely missed it.

 4        Actually, Mr. Weinkle and I were discussing the case

 5   Wednesday afternoon and I looked at the application note of the

 6   provision again and saw that I had completely missed that.

 7        I called the government Wednesday evening and let

 8   them -- at least I left a message letting them know I would be

 9   filing something yesterday and, in fact, I did.

10        So my apologies, Judge, for missing that.  And it was

11   a big miss because I think I'm right.  And I would have hated

12   to have missed an objection to the guidelines that actually is

13   an enhancement in the case that does not apply.

14        Your Honor, with regard to the objection, the

15   enhancement at 2G1.3(b)(3) states, if the offense involved the

16   use of a computer or interactive computer service to, A,

17   persuade, indues, entice, coerce, or facilitate the travel of

18   the minor to engage in prohibited sexual conduct or, B, entice,

19   encourage, offer, or solicit a person to engage in prohibited

20   sexual conduct with the minor, increase by two levels.

21        There is an application note, Your Honor, that

22   specifically applies and directly applies to section

23   2G1.3(b)(3), and that is application note 4.

24        Application note 4 of that section states, subsection

25   (b)(3) is intended to apply only to the use of a computer or an

1    interactive computer service to communicate directly with a

2    minor or with a person who exercises custody, care, or

3    supervisory control of the minor.

4            It goes on to state, accordingly, the enhancement of

5    subsection (b)(3) would not apply to the use of a computer or

6    interactive computer service to obtain airline tickets for the

7    minor from an airline's internet site.

8            What we have -- and I know the Court knows the facts

9    because the Court heard the facts in the trial -- what we have

10   here, Your Honor, is we had a picture of individuals that were

11   purported to be individuals of, I believe, 18, 19 years of age

12   who were offered for various sexual services.  There was a

13   fictitious name that was used with regard to both the ads.  The

14   minors' names in this particular case were not used.

15           And, in fact, you were, the only connection between

16   the minors in this case and the use of a computer at all is a

17   telephone number that was placed on the bottom of the ad, if

18   the Court recalls.  That telephone number was a cell phone that

19   Mr. Cox had that he at various times gave to T.T. and C.Z. in

20   this particular case.  That is the only contact between the

21   computer and the minors in this particular case.

22           And that is a cell phone number placed again at the

23   bottom of the ad.  And individuals then called that particular

24   number and, as the Court knows, they had contact with T.T. and

25   C.Z. in this particular case.

1          The application note (b)(3) requires or says that

2     (b)(3) is intended only to apply -- excuse me, to apply only to

3     the use of a computer or interactive computer service to

4     communicate directly with a minor or with a person who

5     exercises care, custody, or supervisory control.  That simply

6     did not happen here, Your Honor.

7          There was no communication by anyone on the internet

8     using a computer in any way that communicated directly with the

9     minors in this particular case.  That did not happen.  What

10    happened, Your Honor, was there was the placement of an ad in

11    Craigslist, as the Court knows.

12         And I think perhaps we need to kind of recall, and I

13    know this is common knowledge, but what happens here, Your

14    Honor, is an ad is placed on Craigslist.  That ad goes out to

15    potentially everybody who owns a computer.  I don't know how

16    many people that is in the world, Your Honor.  I don't know if

17    that's half a billion, if it's a billion people.  I have no

18    idea.  I'm sure there's statistics out there.

19         But that ad goes out.  Okay.  And -- but certainly,

20    Your Honor, the placing of an ad on Craigslist cannot be direct

21    communication with anyone.  Okay.

22         I certainly didn't get the ad.  I imagine no one else

23    in this courtroom got the ad.  So the placing of the ad on

24    Craigslist is not direct communication with anyone.

25         Now, if someone looks at the ad, then that perhaps can

1    be indirect communication.  But the direct communication that's

2    required here or the -- in application note 3 is that there

3    be -- that the internet service or the computer be used to

4    communicate directly with the minor or the person who exercises

5    care, custody, and supervisory control.

6         That did not happen here.  The only contact that

7    occurred at all in this particular case was telephone contact,

8    cell phone telephone contact.  That's the only contact that

9    occurred between the minors and anyone else in this particular

10   case, telephone contact.

11        That completely contradicts and flies in the face of

12   the clear and plain language of subsection of application

13   note 4 which directs itself directly to 2G1.3.

14        Also what's required, Your Honor, is not just

15   communication, but direct communication with a minor or the

16   custodian of that particular minor.  And I, in my response,

17   Your Honor -- excuse me, in my objection, I indicated the types

18   of cases that I believe and I believe the case law suggests

19   that this particular enhancement applies to.  That was the

20   Vance case and the McDaniel case.

21        In both of those cases, Your Honor, what we had were

22   internet chat rooms.  And everyone knows the problem that's

23   entailed in internet chat rooms.  You have individuals who are

24   on the computer.  Many of them are pedophiles.  They are trying

25   to make contact with underage girls or underage boys.  They do

```
 1    make contact in the chat room.  They go back and forth through

 2    that chat room service on the internet.  They develop a

 3    relationship.

 4         And then what happens in a lot of cases, certainly in

 5    our office, and I know the Court has had this, is the

 6    perpetrator then contacts the individual, they arrange for a

 7    meeting place, and in the lucky cases, it's an agent that's on

 8    the receiving end, but in the unlucky cases, sometimes it is

 9    the minor, and most of the cases in the 11th Circuit, Your

10    Honor, that have applied this particular enhancement.

11         And that is exactly -- that would comport with the

12    plain language of this application note 4.  That would be using

13    the computer to communicate directly with the minor or the

14    custodian of the minor if perhaps it was a babysitter or, God

15    forbid, a parent, someone else who is in the care, custody,

16    control of that individual.  That clearly would apply.

17         None of that, Your Honor, none of that at all happened

18    here.

19         Now, it seems to me, Judge, from the government's

20    response that they are basically making two arguments.  Both of

21    them are wrong, I believe.

22         On page 2 of their response, this is what the

23    government says.  The purpose of the limitation in note 4 is to

24    ensure that the enhancement is applied only in cases where the

25    computer was directly used to further the offense.  So if the
```

1  computer is used in any way to further the offense, the

2  government believes this enhancement applies.

3        There is no support for that statement anywhere.  No

4  support in the case law.  There's no support in the guideline

5  section.  And, in fact, Your Honor, that premise flies directly

6  contradictory to the clear statement in subsection (b)(3) that

7  the enhancement is to apply only to the use of the computer or

8  an interactive computer service to communicate directly with

9  the minor.

10       You can't take the statement that the government makes

11 in their response that if this enhancement applies whenever the

12 computer is used to further the offense, that statement cannot

13 fit within the clear language of application note 4.

14       The government goes on in its response to say the

15 enhancement would apply in any case in which the offender used

16 a computer in any way to facilitate the minor's travel.  Your

17 Honor, that quite clearly is completely contradictory to the

18 plain language of application note 4 which says that it applies

19 only -- it uses the word only -- to the use of a computer or an

20 interactive computer service to communicate directly with the

21 minor.

22       Now, in continuing to put forward this particular

23 premise that the government is forwarding here, they rely on

24 the Bernett case.  Well, first of all, Your Honor, as the Court

25 knows, the Bernett case is an unpublished opinion out of the

1    3rd circuit which has no precedential value even in the third

2    circuit.

3              It was a case that was rendered upon an Anders brief.

4    And as the Court said in that opinion, we are just including

5    the facts here for the parties because this Anders brief, our

6    response to it is only for the parties.  It's not for

7    publication.  Nonetheless, the government goes forward and

8    relies upon that.

9              And, Your Honor, the logic in Bernett, if we are going

10   to look at that in a persuasive fashion, the logic of Bernett

11   does not make sense.  In Bernett, they seem to be saying that

12   if you are a pimp, then you have some supervisory control over

13   the prostitute so, therefore, that makes you the person that

14   fits within the definition of exercising care, control, or

15   supervisory control over the minor.

16             Well, that certainly is inconsistent with the fact

17   that are what you are talking about is the use of a computer,

18   and then that use of a computer is directed to someone who has

19   supervisory control over the minor.

20             It can't be the use of a computer to communicate to

21   the same person who has the supervisory control over the minor.

22   That makes no sense whatsoever, no logical sense whatsoever.

23   And neither really does the Bernett opinion.

24             But, Your Honor, even if we -- you want to disagree

25   with that premise, the Bernett premise, factually the Bernett

1   case does not apply here.  The Bernett case and the few facts

2   that we do have in it state that the defendant in this

3   particular case personally communicated by computer with the

4   individuals he enticed to have sex with A.M.

5           Now, I disagree with that premise because I don't

6   think it comports with (b)(3) because that communication with

7   the computer has to be direct to the minor and here they are

8   talking about something else.  But nonetheless, in the Bernett

9   case, there was personal communication over the computer with

10  individuals.  That's not what we had here.  We did not -- we do

11  not factually have that in this particular case.

12          So the Bernett case, Your Honor, I think affords the

13  Court no direction whatsoever in the way to go regarding the

14  treatment of the enhancement here today.

15          What we do have, Your Honor, and what is precedential,

16  and what should guide the Court with regard to the objection

17  here today is the Patterson case.  Don't know -- again, my late

18  filing of this thing, Judge, I don't know if the Court --

19          THE COURT:  What's the docket entry?

20          MR. DAY:  The docket entry is 171.

21          THE COURT:  I got it.

22          MR. DAY:  Okay.  The Patterson case is precedential,

23  Your Honor.  It is a published opinion, 576 F.3d 431.  And it

24  can be used by the courts for guidance in the treatment of this

25  enhancement objection.  These are the facts in the Patterson

1    case.

2         In Patterson, on October 31st, 2005, Patterson drove

3    the victim from Memphis to Schaumburg, Illinois.  For two weeks

4    the victim worked as a prostitute for Patterson.  During this

5    time, the victim gave Patterson all of the money she earned and

6    stayed in his hotel.

7         Another minor female working as a prostitute for the

8    defendant's half brother posted prostitution advertisements for

9    the victim on internet sites such as Craigslist.

10        These advertisements contained naked photos of the

11   victim.  The other prostitute arranged the victim's calls to

12   johns through the internet and drove her to the calls as well.

13        We clearly have the use of the internet in the

14   Patterson case to at least be able to facilitate the offense.

15   As the government is suggesting to the Court here, that's all

16   you need.  Okay.

17        And this is the response we got from the 11th Circuit.

18   Actually, the government conceded error in that particular

19   case, and the 7th circuit approved that concession of error and

20   this is what they held.  And that's on page 443 of the opinion.

21   Where I was reading from, Judge, was -- excuse me -- that was

22   on page 434 where I had just been reading from Patterson.

23        Then on page 443, the Court, specifically addressing

24   itself to the use of the computer enhancement says, in this

25   case, no computers were used to communicate directly with the

1    victim or the victim's custodian so the enhancement does not

2    apply.

3              Patterson controls here, Your Honor, I believe, and

4    I'm not talking about the fact that it's an 11th Circuit case

5    and you are bound by it.  But we have nothing in the 11th

6    Circuit that says anything different from Patterson.  Patterson

7    is precedential and, I believe, guides us where we need to go

8    here today.

9              Secondly, Your Honor, the government argues that in

10   their response, that this case does not -- I'm quoting from

11   page 3 of the government's response.  This case does not

12   present the situation contemplated by note 4.  The enhancement

13   was not applied based on the use of a computer in an ancillary

14   way such as to communicate between defendants to make hotel

15   reservations or to book travel.

16             So what the government seems to be suggesting is that

17   the second sentence of application note 4, and that is

18   accordingly the enhancement in (b)(3) would not apply to use of

19   a computer or an interactive computer service to obtain airline

20   tickets for the minor from the airline's internet site, that

21   that particular -- that the enhancement in this particular case

22   is only limited by that limitation.

23             In other words, in any situation where the internet

24   was used in planes, trains, and automobiles to arrange any type

25   of meeting, that's the only limitation that applies on the

1   enhancement.  In all other cases, all other cases, if the

2   computer is used to facilitate the offense, the enhancement

3   applies.  That, Your Honor, flies directly, directly in

4   contradiction with the preceding sentence of application note 4

5   which again I know I'm beating a dead horse here, at least it's

6   half dead, subsection (b)(3) is intended to apply only to the

7   use of a computer or an interactive computer service to

8   communicate directly with a minor.

9        You can't read the second sentence the way the

10  government is reading the second sentence without wiping the

11  first sentence completely out of the guidelines manual.

12       And, Your Honor, to read it the way the government is

13  reading it would fly in the face of Patterson.  The way that

14  the government is reading it, the Patterson ruling is wrong.

15  And the government, I guess, has to argue to you that the only

16  case that we have here to guide us, the 7th Circuit Patterson

17  decision is wrongly decided and I don't believe it is.

18       THE COURT:  Thank you, Mr. Day.

19       Mr. Edenfield.

20       MR. EDENFIELD:  Your Honor, if I may have just a

21  second.  Patterson wasn't cited in counsel's brief and I just

22  want a quick second to take a look at that case.

23       THE COURT:  While you are taking a quick second to

24  look at it, I'm going to take a very quick restroom break.

25       (Thereupon, a recess was taken at 11:00 a.m.)

1          THE COURT:  Mr. Edenfield, are you ready to respond?

2          MR. EDENFIELD:  I am, Your Honor.  Judge, I apologize.

3   Mr. Day pointed out during the break that he filed a response

4   to our objections yesterday and this case was cited in that.  I

5   haven't had a chance to review that because I was out of the

6   office yesterday afternoon.  But I apologize.  This was cited

7   in his materials.

8          Your Honor, first, counsel had stated that you have to

9   have direct contact with a minor.  I think, and really I

10  think --

11         THE COURT:  Or the guardian or custodian.

12         MR. EDENFIELD:  Yes, or with the custodian.  I think

13  really we have two cases outside of this circuit that take

14  obviously diametrically opposed positions as to whether this

15  application applies in this case, the Patterson case that

16  Mr. Day just pointed out, and in the Bernett case that we cite

17  in our materials.

18         Your Honor, I also think that Vance, the 11th Circuit

19  case, pretty clearly undercuts the argument of direct contact.

20  What happened in the Vance case is Mr. Vance, the defendant in

21  that case, was in contact with an undercover law enforcement

22  officer trying to arrange a trip to Costa Rica in order to have

23  sex with minors in Costa Rica.

24         He never communicated with an individual pretending to

25  be a minor.  He never communicated with an actual minor.

1    Obviously there were no actual minors because it was a law

2    enforcement sting.  But the person Mr. Vance was talking to was

3    a law enforcement agent pretending to be essentially a tour

4    guide, a person who wold show him around Costa Rica and arrange

5    for him to have sex with minors.

6         The Vance court found that the enhancement we are

7    discussing right now applies in that context.

8         So I think that pretty clearly undermines that you

9    have to have the kind of direct contact that counsel suggested

10   you have to have in order to have the enhancement apply.

11        I also think that's pretty clearly indicated, Your

12   Honor, by the structure of the enhancement itself as well as

13   the application note.

14        If you take a look at section (b)(3), and there are

15   two ways that that can be applied.  There's a section A and a

16   subsection B.  Section A applies where the computer is used to

17   persuade, induce, entice, coerce, or facilitate the travel of

18   the minor.

19        And that's not what we have here.  This computer was

20   not used to persuade a minor.  It wasn't used to induce a

21   minor.  It wasn't used to facilitate the travel of a minor.

22        What it was used to do is, subsection B, it was used

23   to offer or solicit a person to engage in prohibited sexual

24   conduct with a minor.  That's exactly what this computer was

25   used to do.  It was used to post ads on Craigslist that

 1   advertised C.Z. and T.T. that offered them for prohibited

 2   sexual contact.

 3           Application note 4, Your Honor, and it's the

 4   government's belief that what that was designed to do, if we go

 5   back to subsection A which does not apply here, it cuts very,

 6   very broadly.  It states that if the offense involved the

 7   computer to facilitate the travel of the minor, and, Your

 8   Honor, if you applied that on its face and if application

 9   note 4 didn't exist, it would cover an incredibly wide range of

10   activities.  It would include basically everything, especially

11   with as pervasive as computers are now, whenever an individual

12   used that computer to contact other defendants to talk about

13   how to get to the minor, used the computer to actually arrange

14   for the minor's travel, it would apply, but for application

15   note 4.

16           And, Your Honor, I believe that the purpose of

17   application note 4 is to prevent that overbroad reading of

18   subsection (b)(3)(A).  And I think that's made clear by the

19   last sentence of application note 4.  Application note 4, last

20   sentence, is this does not apply with computers just used for

21   instance to make airline reservations.

22           So in instances like that where the computer use is

23   ancillary and isn't really a part of the offense, a central

24   part of the offense, it's telling us you shouldn't apply the

25   enhancement there.

1           But in this case, that's not what we have.  The use of
2      the computer was a central part of the offense just like it was
3      in the Vance case.
4           In the Vance case, again, you have the defendant
5      talking directly to an undercover law enforcement agent and
6      setting up travel for the purpose of having sex with minors.
7           In this case, what we have are two individuals who use
8      the computer to post the advertisements for C.Z. and T.T., to
9      make it clear that, call these numbers, you will be contact
10     with prostitutes, you can meet them and have sex with them.  I
11     think that's exactly what is contemplated by subsection B of
12     (b)(3) the enhancement provision.
13          I think that the circuit court, the third circuit in
14     Bernett was correct when it determined that what you had in
15     that case was a pimp, an individual who, I believe, is in an
16     employment relationship, has control over the minor, and
17     through the basis of that relationship, when the posting was
18     made on Craigslist, which is exactly what we had in that
19     case -- and to be clear, there was never any contact with a
20     minor by those who received the ad in that case.
21          The contact with the minor, just as in this case, was
22     over the telephone.  But the third circuit in that case decided
23     the enhancement was nevertheless appropriate.
24          Your Honor, based upon the Vance case which is binding
25     precedent here in the 11th Circuit as well as the Bernett case

```
 1   which I acknowledge is in sharp contract to the Patterson case,

 2   obviously neither of those binding as Mr. Day pointed out in

 3   this circuit, but based upon the structure of the guideline,

 4   how application of 4 fits in with that, and how the Vance case

 5   tells us that we don't have to have the direct contact that is

 6   suggested, I believe that the enhancement is properly applied

 7   in this case.

 8          THE COURT:  So your position is the placing of the ad

 9   on Craigslist would constitute an offer or solicitation of a

10   person to engage in any prohibited sexual conduct with a minor?

11          MR. EDENFIELD:  Yes, Your Honor.

12          THE COURT:  That's the bottom line?

13          MR. EDENFIELD:  That is the bottom line, Your Honor.

14          THE COURT:  See, when Mr. Day finished his argument, I

15   tell you, I was all ready to rule in favor of Mr. Day.  And

16   then I hear your argument and I find it convincing.

17          So, Mr. Day, go at it.

18          MR. DAY:  Well, hopefully Your Honor, I will be able

19   to swing you back the other way.

20          THE COURT:  All right.  I'm wavering and vacillating

21   here.

22          MR. DAY:  Judge, the government's view would be well

23   taken if application note 4 didn't exist, but it does.

24          THE COURT:  But does application note really apply to

25   subsection B of 2G1.3(b)(3)?
```

1          MR. DAY:  Absolutely.  That's what it says.  The plain

2    reading of the application note says subsection (b)(3).  It

3    doesn't say (b)(3)(A).  It doesn't say (b)(3)(B).  Judge, we

4    have to go with the --

5          THE COURT:  But, subsection B uses the word minor

6    conduct with the minor.

7          MR. DAY:  Right.  I understand that.  And application

8    note 4 explains what type of contact that is.  It's got to be

9    direct communication for this enhancement, direct communication

10   by someone with the minor using the computer or the internet

11   source.

12         I mean, Judge, you can't read the application note --

13   if we're going to be faithful to the application note, which is

14   authoritative, the Stinson case tells us that the application

15   notes are authoritative, we are not free to disregard those.

16   And I'm not suggesting that you are.

17         THE COURT:  Let me ask Mr. Edenfield, the application

18   note, you would agree it's authoritative?

19         MR. EDENFIELD:  I would agree it's authoritative, Your

20   Honor.

21         THE COURT:  The plain language of application note 4

22   indicates that the enhancement should not apply because there

23   was no direct communication over the computer with the minor or

24   the minor's custodian.

25         MR. EDENFIELD:  Your Honor, I believe that application

 1   note 4 actually does allow for that because if you look at --

 2   and as the Bernett case said, if you look at a person who is a

 3   pimp, that person is in a supervisory control relationship with

 4   a prostitute.  That's just the nature of that relationship.

 5          So, Your Honor, in the Bernett case, what the Court

 6   said is we have a pimp making postings on Craigslist.  That is

 7   a communication for purpose of offering a minor to engage in

 8   prohibited commercial sex.

 9          And, Your Honor, I think if you take the expansive

10   reading of application note 4 that counsel suggests, I don't

11   know how B could ever apply, subsection B of (b)(3), because

12   that -- A is in one direction.  A is where someone is

13   contacting the minor.  B is a different situation where you are

14   contacting a person to have sex with a minor.  If you had a

15   situation where the minor was -- I just don't know how

16   (b)(3)(B) would work if you take the very expansive view of

17   application note 4 that counsel suggests.

18          THE COURT:  All right.  Mr. Day.

19          MR. DAY:  Judge, there is nothing -- I mean, we have

20   to deal -- we have to work with what we have in the guidelines.

21   Okay.  We are not free to make up our own interpretations of

22   them.  We have to apply the plain language of these particular

23   provisions.

24          And the plain language of application note 4 says

25   subsection (b)(3) is intended to apply only to the use of

 1   computer or interactive computer service to communicate

 2   directly with a minor.

 3         It does not say that subsection (b)(3)(B) or

 4   (b)(3)(A).  And certainly they could do that, Your Honor.  And

 5   certainly the government's offer here of what they think this

 6   could mean, that could have been written in here.  But we're

 7   not free to make those kinds of suppositions.  We have to apply

 8   the plain language of the guideline section as it is laid out.

 9         And that's exactly, Judge, what the Patterson case

10   did.  The government's argument is completely contradictory to

11   Patterson.  In that particular case, we had a prostitute who

12   was working for the pimp who contacted, using the computer, who

13   contacted the customers and set up the calls over the computer

14   internet service.  Okay.  And they said, no direct contact.  No

15   direct contact with the minor using the computer so, therefore,

16   the enhancement did not apply.  And -- I'm sorry, if the Court

17   has a question.

18         THE COURT:  No, I was ready to rule.  I don't think

19   you need to argue any more.

20         MR. DAY:  I won't then.

21         THE COURT:  Look, I always believe in ruling on the

22   plain meaning of what is said.  And maybe this was not

23   intended, but what they said in application note 4 is

24   subsection (b(3), the whole subsection, didn't delineate A or

25   B, the whole subsection is intended to apply only to the use of

 1   a computer or an interactive computer service to communicate

 2   directly with a minor or with a person who exercises custody,

 3   care, or supervisory control over the minor.

 4          My position has always been, you take the plain

 5   meaning, you can't discern the plain meaning, then you look to

 6   other things.  But the plain meaning clearly says communicate

 7   directly with the minor, and that not being the case here, the

 8   objection is sustained.

 9          All right.  Any other objections?

10          MR. DAY:  No other objections, Your Honor.

11          THE COURT:  Okay.  So let me -- I'm normally very

12   organized, but I've got so many subsequent --

13          MR. DAY:  Judge, it was me.

14          THE COURT:  I'm not faulting anybody.

15          MR. DAY:  Well, I fault me.

16          THE COURT:  Both sides are doing their job.  And I'm

17   never critical of anybody.

18          So, Ms. Gomez, that takes us from a 36 to a 34?

19          THE PROBATION OFFICER:  Correct, Your Honor, based on

20   total offense level of 36 and criminal history category of 2

21   the guidelines imprisonment range 168 to 210 months.

22   Supervised release remains the same, and the fine range is

23   17,500 to 175,000.

24          THE COURT:  Okay.  Does the government have a

25   recommendation?

```
 1            MR. EDENFIELD:  Yes, Your Honor.  Based upon the new
 2   guidelines, there's a guideline range of 168 to 200 months.
 3   The United States would recommend a imprisonment term of 200
 4   months followed by a term of supervised release.
 5            THE COURT:  All right.  Thank you, sir.
 6            Mr. Day.
 7            MR. DAY:  Thank you, Your Honor.  Your Honor, I did
 8   file a motion for downward variance.
 9            THE COURT:  Downward variance?
10            MR. DAY:  Yes, sir.  That was docket entry --
11            THE COURT:  I read that, so --
12            MR. DAY:  I got that one to you in a little better
13   time than I did these others, Your Honor.
14            The first thing I wanted to say, Your Honor, is that
15   Mr. Cox's family, his mother and his niece were here for the
16   trial.  But they could not make it back for the sentencing and
17   neither could his aunt Valarie Cox.
18            They sent letters, or they attempted to send letters
19   to me about two weeks ago, Your Honor, and I don't know, I
20   guess they got the address wrong or whatever.  But they
21   remailed them out and they came in yesterday.
22            So I'm not going to go through each of the letters.
23   I'll just tell Your Honor that, of course, we did get a letter
24   from his mother and father and we sent that to the probation
25   office.  But we have a letter from his aunt Valarie Cox.
```

 1              We have a letter from his pastor in Ohio, a Reverend

 2    Earnest Angley who was the pastor of Mr. Cox's church as

 3    Mr. Cox was growing up there in Ohio.

 4              We have a letter from his niece Shatira who, I

 5    believe, was the -- that was her sister that was here.

 6              We have a letter from Antoinette Cox.  And we have a

 7    letter also, Your Honor, from Dion Cox and Sierra Cox.  And

 8    they are the children of Mr. Cox.

 9              And we have a letter from -- I can't make out the

10    signature on this particular letter.

11              But suffice it to say, Your Honor, that Mr. Cox has

12    substantial family support who are supporting him and have been

13    praying for him during this time.  And so I wanted to make the

14    Court aware of that.

15              Specifically, Your Honor, with regard to my request

16    for a variance -- and, Judge, I'm not going to rehash it all,

17    you read it.  You know the issues that I want the Court to be

18    aware of.  I just want to touch on a couple and highlight a

19    couple.

20              I do believe that a variance is warranted in this

21    particular case, Your Honor, based on the nature and

22    circumstances of the offense prong of 3553(a).

23              I quoted extensively, Your Honor, in my request for a

24    variance from the trafficking victims protection act which I

25    referred to as the TVPA.

```
 1              Judge, we had argument on this when we were delving

 2     into our jury instructions and the various motions that I filed

 3     previously, so I know the Court is aware that it's certainly

 4     our view and I think it's the clear view that the TVPA, both

 5     the 2000 the original version in 2000 and then the 2008

 6     amendments, the Wilberforce amendment, that those -- and, of

 7     course, it was those amendments or those -- that legislation

 8     that was the genesis for 1591 which is the section that Mr. Cox

 9     finds himself convicted of and standing before the Court for

10     sentencing today.

11              It's very clear, Your Honor, from a review of the

12     TVPA, that it is intended to combat international trafficking

13     in persons.  That is very clear through the provisions that are

14     throughout, the titles and the sections and the language of

15     each and every one of those provisions, it's very clear that

16     that is what that particular legislation was directed to.

17              If it is any -- if there is any lack of clarity from

18     the act itself, that is cleared up by Congressman Berman's

19     statements, and that is, the legislative intent which the Court

20     can look at to determine the intent of a particular piece of

21     legislation.  And that legislative intent from Congressman

22     Berman shows clearly what the intent of this particular

23     legislation was.  Again, it's the international trafficking of

24     persons including children.

25              Congressman Berman's legislative comments talk about
```

1    local prostitution.  And, of course, that's what we have here.

2    We've got a local pimp, Mr. Cox, involving two individuals,

3    T.T. and C.Z., age 16 and 17 at the time, in prostitution here

4    in Broward County.

5         Congressman Berman talks about the fact that there

6    will be times when the U.S. Attorney's Office will be able to

7    involve themselves in local prostitution prosecutions.  And he

8    specifically delineates those that are available as tools for

9    them, that is the DC code, the District of Columbia code, the

10   travel act, 18 U.S.C. Section 1952, and the racketeering

11   statutes.

12        Those are the tools that Congressman Berman

13   specifically directed himself to when he talked about the U.S.

14   Attorney's office working in conjunction with local

15   prostitution crime, not 18 U.S.C. 1591 or 1594(c).

16        It's very clear, Your Honor, that the use of this

17   particular statute against Mr. Cox was not intended by

18   congress.  This is again a local prostitution case, and herein

19   lies the problem.  We have a statute, Your Honor, that is

20   designed to address itself to an insidious problem that we have

21   as a country, and that is the international trafficking of

22   individuals from other countries from the Philippines, from

23   China, from Malaysia, taking people away from their countries,

24   bringing them here, subjecting them to sexual exploitation,

25   forced labor, slave labor.  And when these people come, Your

1    Honor, they are completely cut off from family, from resources.

2    They don't speak the language.  They have no resources

3    whatsoever.  It's a real -- as I know the Court knows, this is

4    a major problem that we have as a nation.

5         And this legislation is directed to address that ill,

6    that evil.  And it does so in very harsh terms, ten-year

7    mandatory minimum with life in prison.

8         Base offense level, we start out at a 30.  And we find

9    ourselves at a very, very high base offense level today because

10   we are starting off as a base offense level 30.  That is all

11   very appropriate, Your Honor, when we are talking about the

12   international trafficking of persons into the United States.

13   That's very appropriate.  That punishment fits that crime,

14   Okay.

15        But the application of Mr. Cox's sentence to that

16   particular statute, that then puts us in the category, Your

17   Honor, where the punishment does not fit the crime.

18        Mr. Cox's crime, and we are not running away from it,

19   Your Honor, he was a pimp and he prostituted two underage

20   girls, 16 and 17.  That is what he did.  And that is a local

21   prostitution case.  They are prosecuted all the time in state

22   court.  When I was there, I defended people on those cases.

23        That is not the intent of 1591 with the very severe

24   penalties that we have.

25        THE COURT:  But under state law for a similar crime,

1    you could get up to 15 years in prison, correct?

2            MR. DAY:  Correct, Your Honor.

3            THE COURT:  And from the bottom of the guidelines here

4    is 14 years.

5            MR. DAY:  Yes, sir.

6            THE COURT:  You are seeking a variance.

7            MR. DAY:  I'm seeking a variance, Your Honor.

8    Actually what I said in my particular motion was that -- if you

9    recall, we were looking at different guidelines at that point

10   in time.  I felt that a sentence of 180 months would be a

11   reasonable one in the case.  That would be the statutory

12   maximum of this case prosecuted in state court.

13           Not many people get the statutory maximum when they

14   are prosecuted in state court.  Perhaps if they were a habitual

15   offender of some kind, but Mr. Cox wouldn't be.  I think that

16   was certainly reasonable, and I still think that's reasonable.

17   So I'm asking the Court, I guess, Your Honor, at this point in

18   time, it wouldn't necessarily be a variance.  It would be

19   within the guidelines range a sentence of 180 months.  So I

20   would ask the Court to certainly consider that sentence as

21   being --

22           THE COURT:  That's exactly the number I had intended

23   to impose.  But based on my review of the submissions and, of

24   course, my review of the evidence in the case.

25           But, Mr. Cox, you get last word.

```
 1              THE DEFENDANT:  Good morning, Your Honor.

 2              THE COURT:  Good morning, Mr. Cox.

 3              THE DEFENDANT:  Well, as I stand here today, I say

 4    that you have been very, very fair.  The Court's been very,

 5    very fair.  I have no ill will, no ill thoughts about no

 6    judgment that's about upon me.  But I do have something to say

 7    about my brother Timothy Myers.  He is so innocent.  If you

 8    have any way in your power, whatever what you going to give

 9    him, give it to me.  He is so innocent.

10              Them young ladies just lied on him.  He's just my

11    brother.  If I need him to help, he always helped me.  I always

12    helped him.  I looked out for him all his life.  I'm the big

13    brother.  He is so innocent.  The man is so innocent.

14              Gave me his credit card.  He didn't know what I was

15    doing with his credit card.  He didn't have no idea.  That's my

16    brother.  He wasn't going to question his brother.  He don't

17    question me.  The man does not deserve to do no more days

18    behind nobody bars.  He don't deserve it.  That's it.

19              THE COURT:  Thank you, Mr. Cox.

20              The Court has considered the statements of all

21    parties, the presentence report which contains the advisory

22    guidelines as well as the factors set forth in 18 United States

23    Code section 3553(a).

24              The Court does feel that a sentence of 180 months,

25    which is 15 years in prison, does reflect the seriousness of
```

1    the offense.  It promotes respect for the law and provides just

2    punishment for this crime.

3            In addition, the Court finds that the sentence would

4    afford adequate deterrence.

5            The Court further finds that Mr. Cox is financially

6    unable to pay a fine.

7            It is the judgment of this Court that the defendant,

8    Robert Cox, is hereby committed to the custody of the Bureau of

9    Prisons to be imprisoned for a term of 180 months.  This term

10   consists of terms of 180 months as to each of Counts 1, 2, and

11   3 to be served concurrently.

12           Upon release from imprisonment, Mr. Cox shall be

13   placed on supervised release for a term of 10 years as to each

14   of Counts 1 through 3 to be served concurrently.

15           Within 72 hours of release from the custody of the

16   Bureau of Prisons, Mr. Cox shall report in person to the

17   probation office in the district to which he is released.

18           While on supervised release, Mr. Cox shall not commit

19   any crimes, shall be prohibited from possessing a firearm or

20   other dangerous devices, shall not possess a controlled

21   substance, shall cooperate in the collection of DNA, and shall

22   comply with the standard conditions of supervised release

23   including the following special conditions:

24           Financial disclosure requirement, self employment

25   restriction, permissible search, no unsupervised contact with

1    minors, no contact with minors, no contact with minors in

2    employment, no involvement in youth organizations, sex offender

3    treatment, Adam Walsh Act search condition, and sex offender

4    registration all as noted in part G of the presentence report.

5           The defendant shall pay immediately to the United

6    States a special assessment of $100 as to each of Counts 1, 2,

7    and 3 for a total of $300.

8           So the total sentence imposed is 180 months

9    imprisonment, 10 years supervised release, $300 special

10   assessment.

11          Now that sentence has been imposed, does the defendant

12   or his counsel object to the Court's finding of fact or to the

13   manner in which sentence was pronounced?

14          MR. DAY:  No, Your Honor.

15          THE COURT:  Let me advise you, Mr. Cox, you do have

16   the right to appeal conviction and sentence imposed.  Any

17   notice of appeal must be filed within 14 days after entry of

18   judgment.

19          If you are unable to pay for the cost of an appeal,

20   you may apply for leave to appeal in-forma-pauperis.

21          And should the government appeal, the Court would note

22   for record purposes that --

23          MR. EDENFIELD:  I'm not going to object to the

24   sentence, Your Honor.

25          THE COURT:  Then I don't need to make the comment that

```
 1    I was going to make, the comment being that 180 months the

 2    Court feels is reasonable irrespective of the Court's ruling on

 3    Mr. Day's objection to the enhancement regarding use of

 4    computer.

 5              All right.  Gentlemen, any --

 6              MR. DAY:  Yes, sir.  Your Honor, if you could

 7    recommend to the Bureau of Prisons the facility at Coleman for

 8    Mr. Cox.

 9              THE COURT:  He's got family here in the Southern

10    District of Florida?

11              MR. DAY:  He has some, and this would be the best way

12    for them to communicate with him.

13              THE COURT:  The Court will recommend Coleman.

14              MR. EDENFIELD:  Your Honor, just for the record, the

15    government has advised the victims in this case of the remedy

16    of restitution that is available to them.  They are not seeking

17    restitution, just so we can put that on the record.

18              THE COURT:  Okay.  Thank you, gentlemen.

19              (Thereupon, the hearing was concluded at 11:30 a.m.)

20                             - - -

21

22

23

24

25
```

1                    C E R T I F I C A T E

2

3          I hereby certify that the foregoing is an

4    accurate transcription of the proceedings in the

5    above-entitled matter.

6

7

8    7/25/10                 s/ Tammy Nestor
                             Tammy Nestor, RPR
9                            Official Federal Court Reporter
                             299 E. Broward Boulevard, Suite 203
10                           Fort Lauderdale, FL 33301
                             954-769-5496
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25