```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2
                       CASE NO. 09-60243-CR-COHN
 3

 4   UNITED STATES OF AMERICA,        Fort Lauderdale, Florida

 5              Plaintiff,            May 28, 2010

 6        vs.

 7   TIMOTHY MYERS,

 8              Defendant.            Pages 1 - 12

 9   ------------------------------------------------------------

10                             SENTENCING
                   BEFORE THE HONORABLE JAMES I. COHN
11                    UNITED STATES DISTRICT JUDGE

12   APPEARANCES:

13   FOR THE GOVERNMENT:     SCOTT EDENFIELD, ESQUIRE
                             United States Attorney's Office.
14                           99 Northeast Fourth Street
                             Miami, FL 33132
15

16

17   FOR THE DEFENDANT       JEFFREY WEINKLE, ESQUIRE
     MYERS:                  19 West Flagler Street
18                           Suite 407
                             Miami, FL 33130
19

20
     REPORTED BY:            TAMMY NESTOR, RPR
21                           Official Court Reporter
                             299 East Broward Boulevard, Room 203
22                           Fort Lauderdale, Florida 33301
                             (954) 769-5496
23

24

25
```

```
 1            THE COURT:  The matter before the Court is the United
 2   States of America versus Timothy Myers.  This is case
 3   No. 09-602463-CR.  Mr. Myers is present represented by Jeffrey
 4   Weinkle.  The government is represented by Assistant United
 5   States Attorney Scott Edenfield.
 6            On March 16, 2010 a jury found Mr. Myers guilty of
 7   Counts 2 and 3 of a three-count superseding indictment.
 8   Count -- or rather, each count charged Mr. Myers with sex
 9   trafficking of a child in violation of 18 United States Code
10   Sections 1591(a)(1) and (b)(1).  Pursuant to the jury's
11   verdict, the Court adjudged Mr. Myers guilty of Counts 2 and 3,
12   ordered a presentence investigation report and deferred
13   sentence until today's date.
14            Have counsel for the respective parties received a
15   copy of the presentence report, Mr. Edenfield?
16            MR. EDENFIELD:  Yes, Your Honor.
17            MR. WEINKLE:  Yes, sir, as well as a revised PSI also.
18            THE COURT:  Yes.  And, Mr. Myers, have you received
19   the presentence report and the revised presentence report?
20            THE DEFENDANT:  Yes, sir.
21            THE COURT:  Okay.  There were objections, and I'll be
22   glad to hear those objections now.
23            MR. WEINKLE:  May I assume that your rulings on behalf
24   of Mr. Myers would be the same as they were for Mr. Cox?
25            THE COURT:  I see no reason why they shouldn't be the
```

```
 1   same.
 2            MR. WEINKLE:  Just so we are clear, Your Honor, I
 3   filed objections dealing with the undue influence, the double
 4   counting, and then --
 5            THE COURT:  Undue influence is sustained.
 6            MR. WEINKLE:  Yes.  And I understand you overruled the
 7   objection on double counting.
 8            THE COURT:  Double counting, I overruled the
 9   objection.
10            MR. WEINKLE:  Right.  And then I had filed just this
11   morning an objection regarding the computer enhancement.  I
12   don't know if you received it.
13            THE COURT:  You convinced me.  Sustained.
14            MR. WEINKLE:  Judge, I have one factual objection to
15   the PSI that I did not know of until I actually interviewed
16   Ms. Carla Ross.  In paragraph 85 of the presentence
17   investigation report, it indicates that -- and I'm quoting
18   now -- she recalled, referring to Ms. Ross, she recalled she
19   felt sorry for the two victims in this case when they were
20   brought to her home.
21            I asked her about that this morning and she tells me
22   that that's not a correct recitation of her statement.  In
23   fact, what she had said --
24            THE COURT:  This does not affect the guidelines
25   calculations, correct?
```

```
 1            MR. WEINKLE:  It does not affect the guidelines
 2   calculations, but it's a factual correction that I think might
 3   be important.
 4            Her --
 5            THE COURT:  Because this is something that I would not
 6   consider in determining an appropriate sentence, but if there's
 7   some other reason why you think that the presentence report
 8   should be corrected, certainly I will hear what you have to
 9   say.
10            MR. WEINKLE:  I do.  Should there be a retrial, I
11   don't want there to be -- I don't want this to be construed as
12   us adopting that statement or acquiescing to its accuracy.
13   She, in fact, had told the probation officer, as she told me,
14   that she felt sorry for these girls when she viewed the video
15   of T.T. at her home.
16            You recall there was that lengthy video of T.T. being
17   interviewed in the police station?
18            THE COURT:  Yes.
19            MR. WEINKLE:  And I had given that disc, I had given
20   that video to Mr. Myers.  And apparently he and Ms. Ross viewed
21   it at home together.  She's here.  She will testify and I
22   believe corroborate my proffer.  She felt sorry for the girls
23   when she viewed the video at her home.  She never indicated
24   that the girls --
25            THE COURT:  Is there any objection to modifying the
```

```
 1  presentence investigation to reflect the correction?
 2          MR. EDENFIELD:  None, Your Honor.
 3          THE COURT:  All right.  Then your request is granted.
 4          The presentence report is ordered modified to correct
 5  that inaccuracy.
 6          MR. WEINKLE:  Judge, I have additional argument, but
 7  if we recalculate the guidelines, I think the low end --
 8          THE COURT:  We will do that first before I hear
 9  argument.  I believe the total offense level would be 32,
10  criminal history category 1.
11          Ms. Gomez, where do we stand on the range now?
12          THE PROBATION OFFICER:  121 to 151 months, Your Honor,
13  and the fine range is 17,500 to 175,000.
14          THE COURT:  So the fine range does not change?
15          THE PROBATION OFFICER:  Correct.
16          MR. WEINKLE:  Your Honor, if you are inclined to
17  sentence at the low end of the guidelines -- I recognize
18  there's a ten-year minimum mandatory.  If you are inclined to
19  sentence at the 121, I will not make further argument.
20          THE COURT:  Does the government wish to be heard?
21          MR. EDENFIELD:  That would be my recommendation, Your
22  Honor.
23          THE COURT:  Granted.
24          Mr. Myers, is there something you would like to say,
25  sir?
```

```
 1              THE DEFENDANT:  Yes, sir.
 2              THE COURT:  Sure.  I will be glad to hear from you.
 3              THE DEFENDANT:  I don't know, I don't know much about
 4    the court system.  And I wrote a letter trying to file a motion
 5    to you.  I didn't know if I was supposed to file it with the
 6    Court or anybody trying to file it for a downward departure
 7    from this time because --
 8              THE COURT:  Well, there is a statutory minimum
 9    mandatory term that the Court is required to impose.  If I
10    didn't, if I imposed a sentence below the statutory minimum
11    mandatory of 120 months, I would be automatically reversed.  So
12    I'm mandated to follow federal law.  And federal laws says
13    there has to be a minimum sentence of 120 months.  So a
14    variance in this case could only be a one-month variance from
15    121 to 120.
16              THE DEFENDANT:  Because, I mean, I'm not trying to use
17    religion because I know a lot of people find religion in
18    Broward County jail.  You can tell where a person's heart is by
19    looking at where they spend their money and they time.  I spent
20    my time at church and with my family doing what most people did
21    for community service for volunteer work.
22              I spent what little money I did have paying my tithes
23    at church for the last couple of years.  I wasn't serving two
24    masters.  I was serving one God.  And I admit, I admit I just
25    finished Biblical counseling class.  I didn't have the
```

```
 1   confidence to go out and counsel people, and I would invite him
 2   over to my house.  He read the Bible with me, and I was trying
 3   to build up my confidence to go out and counsel people.
 4          I wasn't trying to do no wrong.  I didn't do nothing
 5   to them girls.  I didn't bother them.  And now -- I was just
 6   enjoying my family and I'm about to lose my family.  I'm scared
 7   to open letters when they write me because I think they are
 8   going to say we had to bury your son.  He's suicidal.  He draws
 9   pictures of him with God and me and my wife on earth crying.
10          I didn't do nothing.  He admitted I didn't do nothing.
11   I was trying to help people.  I wasn't trying to hurt nobody.
12   I figured if I could nip problems like this at the source that
13   I wouldn't have to go out and talk to girls on the street, if I
14   could nip it at the source.  I wasn't posting no ads like that.
15          THE COURT:  Are you saying you didn't place this ad on
16   the computer?
17          THE DEFENDANT:  Yes, I didn't place the ad.  He just
18   told you I didn't place the ad.  Now I'm about to lose my
19   family for just trying to help.  I was just doing what I
20   thought God wanted me to do, go out and evangelize to people
21   and help them.  I wasn't trying to hurt nobody.  I didn't put
22   no ads like that.
23          Now I'm going to lose my family for just doing God's
24   work.  And everybody keeps telling me, hold on, this is just
25   your testament of faith on how God brung from you the fire so
```

```
 1   when you be a church member -- I mean, I told the police, I
 2   said, I will help you in any way, but I'm not going to lie.
 3            And they said, no, he won't cooperate with what's
 4   going on.  Even them girls' stories didn't corroborate.  I
 5   heard four different versions of one incident.
 6            I was just trying to help people.  I was not trying to
 7   hurt nobody.  I did not put no ad up.  He admitted I didn't put
 8   no ad up.  I was only trying to help people.
 9            If you give me a suspended sentence or overturned
10   verdict or anything, if you look at me a year from now, ten
11   years from now, or the rest of my life, I'm going to be out in
12   the community trying to help people.
13            I don't want to tell people you got this wrong and
14   just grade they paper and put a red X.  I want to show them how
15   to get an A.  I want to roll up my sleeves and go out in the
16   community and help people to change things.  I want to
17   establish a good world and bring people closer to God.  That's
18   all I was trying to do.  I wasn't trying to hurt nobody.
19            I go and volunteer on Saturdays to help people at a
20   soccer camp and do Bible studies.  I got numerous papers where
21   I pay my tithes.  I pay my tithes before I even pay my rent.  I
22   was getting evicted.  I still paid my tithe.
23            They say that stuff happened, some of it happened in
24   on Easter, I was in church on Easter.
25            THE COURT:  Sir, the jury has spoken.  The jury has
```

1  found based on the evidence presented during the trial in
2  effect that you did use the computer to place these ads and I
3  have to respect the jury's verdict.
4         Now, you do have the right to appeal, which I will
5  certainly advise you of after I impose sentence.  But right now
6  we have a jury verdict of guilty.  We have a minimum mandatory
7  statutory provision of 120 months.  And I'm obligated to follow
8  the law.  So, you know, I understand your position, but this is
9  the way our system works.
10        THE DEFENDANT:  I'm not even allowed like a suspended
11 sentence or --
12        THE COURT:  No, sir, I can't do that.  But you do have
13 the right to take this to a higher court and assert whatever
14 error you feel there was in the proceedings before this Court.
15 And, of course, you do have some arguments regarding this
16 particular statute that were raised by both Mr. Weinkle and
17 Mr. Day.  And, of course, they will be addressed by the 11th
18 Circuit Court of Appeals, and I'm sure that they will certainly
19 review those matters de novo, which means from the beginning.
20        So the Court has considered the statements of all
21 parties, the presentence report which contains the advisory
22 guidelines as well as those statutory factors set forth in 18
23 United States Code Section 3553(a).  The sentence will be
24 imposed at the bottom of the advisory guideline range.  The
25 Court finds that that sentence does reflect the seriousness of

```
 1  the offense, promotes respect for the law, and provides just
 2  punishment and deterrence.
 3          The Court further finds that Mr. Myers is financially
 4  unable to pay a fine.  It is the judgment of this Court that
 5  the defendant, Timothy Myers, is hereby committed to the
 6  custody of the Bureau of Prisons to be imprisoned for a term of
 7  121 months as to each of Counts 2 and 3 to be served
 8  concurrently.
 9          Upon release from imprisonment, Mr. Myers shall be
10  placed on supervised for a term of 5 years as to each of
11  Counts 2 and 3 to be run concurrently.
12          Within 72 hours of release from the custody of the
13  Bureau of Prisons, Mr. Myers shall report in person to the
14  probation office in the district to which he is released.
15          While on supervised release, Mr. Myers shall not
16  commit any crimes, shall be prohibited from possessing a
17  firearm or other dangerous devices, shall not possess a
18  controlled substance, shall cooperate in the collection of DNA,
19  and shall comply with the standard conditions of supervised
20  release including the following special conditions:
21          Financial disclosure requirement, self-employment
22  restriction, permissible search, no unsupervised contact with
23  minors, no contact with minors, no contact with minors in
24  employment, no involvement in youth organizations, sex offender
25  treatment, Adam Walsh Act search condition, and sex offender
```

```
 1   registration, all as noted in part G of the presentence report.
 2            Finally, Mr. Myers, you are ordered to pay immediately
 3   to the United States a special assessment of $100 as to each of
 4   Counts 2 and 3 for a total of $200.  Total sentence imposed is
 5   121 months imprisonment, 5 years supervised release, and a $200
 6   special assessment.
 7            Now that sentence has been imposed, does the defendant
 8   or his counsel object to the Court's finding of fact or to the
 9   manner in which sentence was pronounced?
10            MR. WEINKLE:  No, sir.
11            THE COURT:  Let me advise you --
12            MR. WEINKLE:  I'm sorry, Your Honor, excuse me.
13            I'm sorry, Your Honor.  Thank you.
14            THE COURT:  Let me advise you, Mr. Myers, you do have
15   the right to appeal the conviction and sentence imposed.
16            Any notice of appeal must be filed within 14 days
17   after entry of judgment.
18            If you are unable to pay for the cost of an appeal,
19   you may apply for leave to appeal in-forma-pauperis.
20            Good luck to you, Mr. Myers.
21            MR. WEINKLE:  Your Honor, if I had may?
22            THE COURT:  Yes.
23            MR. WEINKLE:  Two things.  First of all, regarding
24   your order that he not have any unsupervised contact with
25   minors, would you exclude members of his immediate family from
```

```
 1  that?
 2          THE COURT:  Yes, sir.
 3          MR. WEINKLE:  And second of all, would you -- we would
 4  request that you recommend a designation to a facility as close
 5  to south Florida as possible.
 6          THE COURT:  The Court will recommend a facility
 7  located within the Southern District of Florida.
 8          MR. WEINKLE:  All right.  Sir, thank you very much.
 9          THE COURT:  Thank you, Mr. Weinkle, Mr. Edenfield.
10          MR. EDENFIELD:  Thank you, Judge.
11          (Thereupon, the hearing was concluded at 11:48 a.m.)
12                             - - -
13                      C E R T I F I C A T E
14
15           I hereby certify that the foregoing is an
16  accurate transcription of the proceedings in the
17  above-entitled matter.
18
19
20  7/25/10                    s/ Tammy Nestor
                               Tammy Nestor, RPR
21                             Official Federal Court Reporter
                               299 E. Broward Boulevard, Suite 203
22                             Fort Lauderdale, FL 33301
                               954-769-5496
23
24
25
```